UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| **TOWN & COUNTRY PARTNERS LLC,** | ) | Case No. **21-08430** |
| | ) | |
| Debtor. | ) | Honorable Jacqueline P. Cox |

## NOTICE OF MOTION

To: See Attached Service List.

PLEASE TAKE NOTICE that on **Tuesday, October 12, 2021** at **1:00 PM**, I will appear before the Honorable Jacqueline P. Cox, or any judge sitting in her place, and present the United States Trustee's **Motion to Appoint Chapter 11 Trustee, or, in the Alternative, Convert Case to One Under Chapter 7,** a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, (1) use this link: https://www.zoomgov.com/. (2) Enter the meeting ID 1612732896. (3) Enter the passcode 778135.

**To appear by telephone**, (1) call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. (2) Enter the meeting ID 1612732896. (3) Enter passcode 778135.

**When prompted identify yourself by stating your full name.**

**To reach Judge Cox's web page** go to www.ilnb.uscourts.gov and click on the tab for Judges.

**If you object to this motion** and want it called on the presentment date above, you may file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may call the matter regardless.

*/s/ Jeffrey L. Gansberg*
Jeffrey L. Gansberg, Trial Attorney
Office of the United States Trustee
219 South Dearborn, Room 873
Chicago, Illinois 60604
(312) 886-3327

1

## CERTIFICATE OF SERVICE

I, Jeffrey L. Gansberg, Trial Attorney, certify that on September 21, 2021, I caused to be served copies of the **Notice of Motion** and **Motion to Appoint Chapter 11 Trustee, or, in the Alternative, Convert Case to One Under Chapter 7** on the ECF Registrants shown below *via* the Court's Electronic Notice for Registrants and *via* First Class US Mail by BMC Group on all other entities shown at the addresses listed below. A supplement to this Certificate of Service from BMC Group will be filed.

*Jeffrey L. Gansberg*

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice for Registrants:**

J Kevin Benjamin    attorneys@benjaminlaw.com
Theresa S. Benjamin    theresa@benjaminlaw.com
Trinitee G. Green    tggreen@polsinelli.com
Jerry L Switzer    jswitzer@polsinelli.com
Martin J Wasserman    mwasserman@carlsondash.com,

**See following First Class Mail Service List starting on next page:**

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0752-1<br>Case 21-08430<br>Northern District of Illinois<br>Eastern Division<br>Mon Sep 20 14:28:05 CDT 2021 | Jordan & Morgan Estates LLC | Town & Country Partners LLC<br>9501 W. 144th Place<br>Suite 304<br>Orland Park, IL 60462-2564 |
| U.S. Bankruptcy Court<br>Eastern Division<br>219 S Dearborn<br>7th Floor<br>Chicago, IL 60604-1702 | 110th & Halsted Credit Union<br>c/o Sorman Frankel ltd<br>180 N. Lasalle Street, Suite 2700<br>Chicago, IL 60601-2709 | Aaron Harris<br>9129 S. Paulina Street<br>Chicago, IL 60620-5556 |
| Austgen Kuiper Jasaitis P.C.<br>130 North Main Street<br>Crown Point, IN 46307-4063 | Cohen Dovitz Makowka<br>10729 W. 159th St.<br>Orland Park, IL 60467-4531 | David P. Leibowitz as Trustee for<br>Ch 7 Estate of Aaron Harris<br>3438 N Elaine Place, Unit 4<br>Chicago, IL 60657-0801 |
| Department of the Treasury<br>Internal Revenue Service<br>P.o Box 7346<br>Philadelphia, PA 19101-7346 | Dynasty Holdings, LLC<br>5403 S. LaGrange Road<br>Countryside, IL 60525-2852 | (p)ILLINOIS DEPARTMENT OF REVENUE<br>BANKRUPTCY UNIT<br>PO BOX 19035<br>SPRINGFIELD IL 62794-9035 |
| Indian American Water<br>650 Madison Street<br>Gary, IN 46402-2254 | Internal Revenue Service<br>Centralized Insolvency Operation<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | Jordan and Morgan Estates<br>c/o Carlson Dash<br>200 S. Wacker Drive<br>Chicago, IL 60606-5829 |
| Jordan and Morgan Estates<br>c/o Carlson Dash<br>216 S. Jefferson Street, Suite 504<br>Chicago, IL 60661-5698 | Jordan and Morgan Estates<br>c/o Jason Huff<br>826 Old Mountain Rd NW<br>Kennesaw, GA 30152-3843 | M. Gretchen Silver<br>U.S. Trustee's Office<br>219 S. Dearborn Street, Suite 873<br>Chicago, IL 60604-2027 |
| Nipsco<br>1261 Dakota Street<br>Gary, IN 46403-3443 | Pinnacle Asset Management, LLC<br>9501 W. 144th Place<br>Suite 304<br>Orland Park, IL 60462-2564 | Portgage Utility Services<br>6070 Central Avenue<br>Portage, IN 46368-3501 |
| Sage Workinger<br>c/o Carlson Dash<br>200 S. Wacker Drive<br>Chicago, IL 60606-5829 | Sage Workinger<br>c/o Carlson Dash<br>216 S. Jefferson Street, Suite 504<br>Chicago, IL 60661-5698 | Toorak Capital Partners<br>15 Maple Street<br>Summit, NJ 07901-5008 |
| Toorak Capital Partners<br>c/o Hammerschmidt, Amaral & Jonas<br>137 N. Michigan Street<br>South Bend, IN 46601-1603 | Toorak Capital Partners LLC<br>c/o Trinitee G. Green<br>Polsinelli PC<br>150 N. Riverside Plaza, Suite 3000<br>Chicago, IL 60606-1599 | Triumph Capital Partners LLC<br>155 S. Highway 101<br>Suite 7<br>Solana Beach, CA 92075-1800 |
| Warburg Equities LLC<br>6101Canden Avenue<br>Portage, IN 46368 | J Kevin Benjamin Esq.<br>Benjamin Legal Services PLC<br>1016 W. Jackson Boulevard<br>Chicago, IL 60607-2914 | Patrick S Layng<br>Office of the U.S. Trustee, Region 11<br>219 S Dearborn St<br>Room 873<br>Chicago, IL 60604-2027 |

Theresa S. Benjamin  Esq.
Benjamin * Brand, LLP
1016 W. Jackson Boulevard
Chicago, IL 60607-2914

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Illinois Department of Revenue
Bankruptcy Unit
PO Box 19035
Springfield, IL 62794-9035

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Toorak Capital Partners, LLC            (u)Sage Workinger                    End of Label Matrix
                                                                                Mailable recipients   30
                                                                                Bypassed recipients    2
                                                                                Total                 32

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| **TOWN & COUNTRY PARTNERS LLC,** | ) | Case No. **21-08430** |
| | ) | |
| Debtor. | ) | Honorable Jacqueline P. Cox |

**MOTION TO APPOINT CHAPTER 11 TRUSTEE, OR, IN THE ALTERNATIVE, CONVERT CASE TO ONE UNDER CHAPTER 7**

NOW COMES PATRICK S. LAYNG, the United States Trustee for the Northern District of Illinois (the "**U.S. Trustee**"), by his attorney, Jeffrey L. Gansberg, and pursuant to §§ 1104 and 1112(b) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "**Code**"), moves this Court for entry of an order appointing a Chapter 11 Trustee or, in the alternative, converting the Chapter 11 case of Town & Country Partners LLC (the "**Debtor**") to a case under Chapter 7 of the Code. In support of this Motion, the U.S. Trustee states as follows:

**INTRODUCTION**

1. In the short period of time since this case was filed, the Debtor has proven that it does not know the facts sufficient to operate its business and is incapable of acting as a fiduciary for its estate and creditors and a trustee should be appointed or the case should be converted to one under Chapter 7.

2. Specifically, at its 341 Meeting of Creditors (the "**341 Meeting**") the Debtor had two representatives testify. Two representatives were required because one representative had signed the petition and another had signed the schedules and the statement of financial affairs. At the 341 Meeting the Debtor's representatives: (i) testified that the Debtor's parent held an interest in the real property that is at the heart of this bankruptcy case while the other testified that it did

1

not; (ii) could not identify its senior secured lender; and (iii) testified that the Debtor was not using cash collateral. Even a cursory review of the Debtor's monthly operating report, as amended, for the month ending July 31, 2021, reveals that, in addition to other problematic activity, the Debtor has used cash collateral.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

4. This is a core proceeding concerning the administration of the estate pursuant to 28 U.S.C. § 157(b)(2)(A) which this Court may hear and determine pursuant to IOP 15(A) and LR 40.3.1 of the United States District Court for the Northern District of Illinois.

5. Venue of this case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The U.S. Trustee has standing to file the Motion under 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3).

## FACTUAL SUMMARY

7. The Debtor filed this case on July 14, 2021 (the "**Petition Date**") by filing a voluntary petition under Chapter 11 of the Code. The Petition was signed by Antonio Barnes ("**Barnes**") as the Manager of Warburg Equities LLC ("**Warburg**") which is the Manager of the Debtor.

8. On July 28, 2021, Debtor's counsel filed his Form 2030 and his Rule 2016 Disclosure (the "**2016 Disclosure**"), disclosing how much he was paid for this case and the source of that payment. The 2016 Disclosure indicates that Debtor's counsel received a $25,000 retainer paid by Pinnacle Asset Management LLC ("**Pinnacle**").

9. On August 13, 2021, the Debtor filed its schedules (the "**Schedules**") and statement of financial affairs (the "**SOFA**"). [Dkt Nos. 26, 28, respectively]. These documents were signed under penalty of perjury.

10. On August 19, 2021, the U.S. Trustee held the 341 Meeting. Prior to the 341 Meeting, the U.S. Trustee solicited creditors to form an unsecured creditors' committee. To date, insufficient interest has been expressed to form such a committee.

**A. The 341 Meeting**

11. At the 341 Meeting, the Debtor's representatives, Barnes and Gregory Perkins ("**Perkins**"), testified. When Barnes was asked why he signed the Petition as the Manager of Warburg instead of as the Manager of the Debtor, he could not provide an answer. He did testify, however, that Warburg holds an interest in the real property that is the subject of this bankruptcy case although he could not identify the nature or extent of that interest. To the contrary, Perkins testified that the Debtor and not Warburg owned the property and that Warburg had no interest in the property. Both Barnes and Perkins are related to Warburg– Barnes is the manager and Perkins is the agent. *See* Illinois Secretary of State information for Warburg Equities LLC, attached hereto as **Exhibit A.**

12. At the 341 Meeting, Perkins testified that Pinnacle is the property manager for the Debtor's real property and that Pinnacle has no overlapping ownership with the Debtor. Although Perkins testified that there is no overlap in ownership, there is some relationship between Pinnacle and the Debtor because Tiffany Perkins is a former manager of the Debtor (*see* SOFA [Dkt No. 28] at question 29) and is a current manager of Pinnacle (*see* Illinois Secretary of State information for Pinnacle Asset Management LLC, attached hereto as **Exhibit B**).

3

13. During the course of the 341 Meeting, it became clear that there were substantial discrepancies between the Schedules and SOFA and each of the Debtor's representative's testimony at the 341 Meeting. Although questions arose based on the discrepancies and it became clear that amendments to the Schedules and Statement of Financial Affairs were necessary, the Debtor has filed no amendments.

14. When the Debtor filed its monthly operating report for the month ending July 31, 2021, additional questions arose.[1] [Dkt No. 32]. Some of those questions were answered when the Debtor filed its amended MOR (the "**MOR**") -- but certain problematic information also was confirmed.

**B. The MOR Is Unclear and Contains Information Contradictory to Its Attachments and Other Filings**

15. The information contained in the MOR raises concerns about the Debtor's ability to operate in a Chapter 11 because it contains information that directly contradicts information contained in the attachments thereto and also testimony at the 341 Meeting. Additionally, based on the MOR, it appears that the Debtor does not understand how Chapter 11 operates and its obligations during its case.

16. Initially, the MOR indicates that a bank statement was attached. However, the Debtor did not attach a bank statement. Instead, the Debtor attached a print-out which listed limited bank transactions. It is unclear whether these transactions are all of the banking transactions for July or whether they are the transactions that the Debtor wants seen.

17. The MOR also indicates that the Debtor: (i) is not current on its post-petition tax return filings, and (ii) did not remit all trust fund taxes on a current basis. *See* MOR at p. 3.

---

[1] The MOR indicates that it is being reported on a "cash" rather than "accrual" basis indicating expenses that were incurred were paid rather than just being accrued.

4

18. Lastly, the Debtor indicates in the MOR that a disclosure statement has been filed – but no disclosure statement has been filed.

i. **The Debtor's Cash Position Cannot be Determined**

19. Because of the inconsistent information provided by the Debtor, its cash position cannot be determined. The Debtor's Schedule A/B indicates that as of the Petition Date, the Debtor had $8,465 in cash. During the 341 Meeting, Perkins testified that the Debtor had not used cash or cash collateral during the pendency of the bankruptcy case. Contrary to the testimony, in the MOR the Debtor admits that it used cash collateral.

20. However, the calculation of cash remaining at the end of July in the MOR does not properly calculate if the uses and sources of cash are traced. The MOR indicates a loss of $3,809 on a cash basis for July. Deducting that loss from the initial cash balance of $8,465 as set forth in the Schedules does not equal $1,600 or $1,670 – which is the cash balance set forth in the Balance Sheet [Doc No. 32-1] and the MOR, respectively. Nowhere is that discrepancy explained. And nowhere does the Debtor explain how, if it did not use cash collateral, its cash balance decreased during the month.[2]

21. Further, attempting to reconcile the cash balance is not possible because the cash, expenses, and income differ on each of the MOR and the "Profit & Loss" attached to the MOR.

ii. **The Debtor Has Used Cash Collateral Despite Testimony to the Contrary**

22. Although the Debtor has provided conflicting information and testimony regarding its use of cash collateral, the Debtor admits in the MOR that it has used a significant amount of cash collateral. It used that cash collateral without a court order or consent of the secured creditor.

---

[2] Clearly, as indicated by the MOR, despite testimony to the contrary, the Debtor used cash collateral during July.

23. At the 341 Meeting Perkins testified unequivocally that the Debtor had not used cash collateral. Despite that unequivocal statement, earlier at the 341 Meeting, the Debtor's representative testified that the Debtor paid pre-petition obligations to be paid post-petition. That is confirmed by the MOR. *See* MOR at p. 3.

24. Contrary to the testimony at the 341 Meeting, the MOR indicates that the Debtor disbursed a significant amount of money in July. The MOR indicates that the Debtor expended $46,605 in General and administrative expenses and $25,549 in Other expenses in July. *See* MOR at p. 2.

25. Additionally, although the figure does not match the spending set forth in the MOR (or any other information provided by the Debtor), the transaction statement attached to the MOR indicates that the Debtor transferred $12,140 from its account to another account during July. *See* Doc 32-3. However, the Debtor has not scheduled a second account and its Motion Excusing Debtors Requirement to Obtain and Maintain a Debtor-in-Possession Bank Account and Authorizing the Debtors to Maintain and Use Existing Bank Accounts (the "**Account Motion**") [Dkt No. 34] indicates that the Debtor has only one bank account. *See* Account Motion at ¶ 10.

26. Also contradictory, the Profit and Loss attached to the MOR indicates that the Debtor paid $26,738 in legal fees during July. That is the exact amount disclosed on the Rule 2016 Disclosure as having been paid to Debtor's counsel. However, the Rule 2016 Disclosure indicates that the legal fees were paid by Pinnacle and Pinnacle executed a Lar Dan Declaration so stating. No explanation is provided for this contradictory information.

27. Irrespective of the cash balance at the end of July, the Debtor has admitted that it used cash collateral without an order of Court or consent of the creditor despite its statements at the 341 Meeting.

6

**The Debtor's MOR Contains Information that Conflicts with its Attachments**

28. The information contained in the MOR conflicts with information in its attachments.

29. Attached to the MOR were a "Balance Sheet," a "Profit & Loss," and the transaction sheet that purported to be a "bank statement." *See* Dkt No. 32 with its attachments.

30. The Balance Sheet,[3] like the other documents and testimony in this case, provides different information than every other source of information. For example, it indicates that the Debtor has $1,600 in cash and equivalents at the end of July. That differs from the $1,670 in the MOR.

31. The Balance Sheet also indicates that the value of the Debtor's assets is $7,208,481. However, the MOR indicates that the value of the Debtor's assets is $10,800.00. No explanation is given for the discrepancy.

32. Further, the Total Assets in the Balance Sheet does not equal the Total Liabilities and Equity. As a definitional matter, those numbers must be equal.

33. Like the Balance Sheet, the information on the Profit & Loss does not match information provided on other sources. For example, the Profit & Loss indicates that the Debtor had revenue of $50,671 in July. But the MOR indicates that the Debtor had gross income/sales of $9,085. No explanation is given for the difference.

**C. Other Discrepancies and Concerns**

34. In addition to the foregoing, there are other concerns with the information provided by the Debtor in this case.

---

[3] The Balance Sheet reflects a date range rather than a specific date. The dating mechanism for Balance Sheets is as of a specific date because balance sheets are a snapshot of the reporting entities' financial position.

7

**The Calculation of and Amount of the Debtor's Accounts Receivable is Unclear**

35. The Schedules indicate that exactly one half of the Debtor's accounts receivable under 90 days old and exactly one half of the Debtor's accounts receivable over 90 days old are uncollectible. At the 341 Meeting, the Debtor's representative could not explain why the uncollectible accounts were listed at exactly 50% for each.

36. Despite the Schedules indicating that one half of the Debtor's accounts receivable are uncollectible, at the 341 Meeting, the Debtor's representative testified that the building was only receiving about 40% of the rent due each month. The Debtor's representative did not explain how a 40% rate of collection equaled a 50% uncollectible rate of receivables.

37. That inconsistency is further compounded by comparing the Schedules and the MOR and the 341 Meeting testimony. The MOR indicates that the Debtor's accounts receivable **decreased** by approximately $2,000 ($268,188 (Petition) less $266,188) during July, although the Debtor's representative testified that the economic occupancy (those paying rent) was approximately 40%. And the accounts receivable over 90 days old did not change at all.

    i.    **The Debtor's Representatives Gave Conflicting Testimony Regarding the Ownership of and Mortgagee of the Real Property**

38. In its Schedule A/B, the Debtor indicates that it is the owner of the real property at issue in this case. It also indicates on Schedule D, that Toorak Capital Partners is the mortgagee on the real property.

39. At the 341 Meeting, however, different information was provided. Specifically, one of the Debtor's representatives (Barnes) testified that he believed that Warburg had an ownership interest in the real property while the other representative (Perkins) testified that Warburg had no interest in the real property. Later during the 341 Meeting, when the U.S.

Trustee's attorney asked what consideration was paid to Warburg by the Debtor when/if the real property was transferred, the answer was vague and confusing.

40. Additionally, although the U.S. Trustee believes that Toorak Capital Partners is the mortgagee, as indicated on Schedule D, there was testimony that an entity called "Triumph" may be the mortgagee. The Debtor's representative could not definitively provide the identity of the mortgagee.

    **ii.**    **Statement of Financial Affairs**

    **(a) The Debtor's Rental Income**

41. Like with the Schedules, the SOFA contains information that contradicts the MOR and the testimony at the 341 Meeting.

42. Line 1 of the SOFA indicates that year to date (the Petition Date, July 14, 2021), that the Debtor's gross revenue was $416,279.41 – which if annualized would constitute a substantial increase from the previous years' income. The Debtor's representative could not explain the increase in revenue from the previous years.

43. However, the increase is contradicted by the Debtor's representative's testimony at the 341 Meeting and the MOR. The representative testified that economic occupancy and the rental income were both down.

    **(b) Payments Within 90 Days of the Petition Date**

44. In the SOFA, the Debtor indicated that it made no payments to creditors during the 90 days prior to the bankruptcy filing.

45. However, during the 341 Meeting, the Debtor's representative indicated that they did not understand the question and did make payments during that period. To date, no amendment has been made to the SOFA.

(c) **Repossessions, foreclosures and returns**

46. Question 5 on the SOFA indicates that a debtor is to disclose "all property that was obtained by a creditor within 1 year before filing this case . . . " In response the Debtor indicated that Toorak Capital Partners had taken 18 multi family buildings.

47. During the 341 Meeting, the Debtor's representative testified that Toorak had not foreclosed upon or taken any buildings. Instead, they indicated that they misunderstood the question and that they were referencing the litigation.

### iii. The Debtor's Insurance

48. As required, the Debtor provided to the U.S. Trustee a certificate of insurance for the property (the "**Certificate**"). A copy of the Certificate of Insurance is attached hereto as **Exhibit C**.

49. The Certificate also raises questions. The Certificate indicates that the named insured is 7 M & D Properties LLC. There is no reference to the Debtor. Similarly, the "Mortgagee and Loss Payee" is listed as "Bank of America, N.A., its Successors and/or Assigns." No mention is made of Bank of America in the Debtor's petition, Schedules, or SOFA. Rather, the Debtor testified that it was hoping Bank of America would provide funding prior to the bankruptcy case, but which funding was never provided.

50. Based on the Certificate, significant information is unclear.

## ARGUMENT

51. The many conflicting facts provided by the Debtor during the 341 Meeting, in its Schedules and SOFA, and in the MOR indicate that this Debtor is not capable of being a debtor-in-possession. It has no grasp of its finances or its operations. Accordingly, this Court should appoint a trustee or convert the case to one under chapter 7.

52. The Bankruptcy Code provides two bases for the appointment of a trustee in a chapter 11 case. First, under 11 U.S.C. § 1104(a)(1), the bankruptcy court must appoint a trustee if a movant, after notice and a hearing, demonstrates "cause." 11 U.S.C. 1104(a)(1) ("[T]he court *shall* order the appointment of a trustee . . .") (emphasis added).

53. Section 1104(a)(2) authorizes a bankruptcy court to appoint a chapter 11 trustee, without a showing of cause, "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor." 11 U.S.C. § 1104(a)(2).

**Cause Exists to Appoint a Trustee**

54. Section 1104(a)(1) provides that the bankruptcy court must appoint a trustee if a movant, after notice and a hearing, demonstrates "cause." 11 U.S.C. 1104(a)(1) ("[T]he court *shall* order the appointment of a trustee . . .") (emphasis added). Section 1104(a)(1) provides four non-exclusive circumstances constituting "cause" for the appointment of a trustee "including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . ." *Id*. However, this list is not exhaustive. *In re Sillerman*, 605 B.R. 631, 641 (Bankr. S.D.N.Y. 2019).

55. "Courts may also take into account whether: (1) the alleged misconduct was material; (2) the debtor treated insiders and affiliated entities better or worse than other creditors or customers; (3) the debtor made pre-petition voidable preferences or fraudulent transfers; (4) the debtor was unwilling or unable to pursue causes of action belonging to the estate; (5) conflicts of interest on the part of management interfered with its ability to fulfill its fiduciary duties to the debtor; and (6) management engaged in self-dealing or squandering of corporate assets." *LHC*,

11

497 B.R. at 292. Further, the breach of a debtor-in-possession's fiduciary duty can constitute cause to appoint a trustee. *In re LHC, LLC*, 49 B.R. 281, 292 (Bankr. N.D. Ill. 2013).

56. Determinations to appoint a trustee for cause are fact intensive. (*In re Bellevue Place Assocs.*, 171 B.R. 616, 623 (Bankr. N.D. Ill. 1994)), and only require proof by a preponderance of the evidence. *In re Woodlawn Comm. Dev. Corp.*, 613 B.R. 671, 681 (N.D. Ill. 2020) *but see*, *Bellevue*, 171 B.R. at 623. Courts have "wide latitude" in determining whether cause exists to appoint a trustee. *Woodlawn,* 613 B.R. 684. And, a court can review both "pre- and post-petition conduct." *LHC,* 49 B.R. at 291.

57. The Supreme Court consistently has held that the presumptive standard of proof in civil cases is preponderance of the evidence unless a fundamental right is implicated or there is contrary Congressional direction. *Woodlawn*, 613 B.R. at 681; s*ee also Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S. Ct. 1923, 1934 (2016) (rejecting heightened burden for award of enhanced damages for patent infringement); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 34 S. Ct. 1749, 1758 (2014) (rejecting heightened burden for attorneys' fees award in patent litigation); *Grogan v. Garner*, 498 U.S. 279 (1991) (rejecting heightened burden for exceptions to discharge); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-390 (1983) (rejecting heightened burden for securities fraud).

58. Although the preponderance of the evidence standard is implicated, some courts have employed the heightened "clear and convincing evidence" standard before appointing a trustee. *Woodlawn*, 613 B.R. at 682 (citations omitted); *see also*, *Bellevue*, 171 B.R. at 623 (applying clear and convincing standard). The basis for the heightened standard is that the appointment of a trustee is an "extraordinary remedy" and there is a "strong presumption" that a

debtor should remain in possession. *Woodlawn*, 613 B.R. at 682. However, those courts confuse "a presumption in the 'technical sense'" with a "clear and convincing burden of persuasion." *Id.*

59. Section 1104 does not specify a standard, so there is no reason to deviate from the preponderance of the evidence standard. *Id.* However, even if a "clear and convincing" standard is applied, that standard is also met.

**The Debtor's Conduct Evidences that Appointment of a Trustee is in the Best Interest of the Creditors and the Estate**

60. Section 1104(a)(2) authorizes a bankruptcy court to appoint a chapter 11 trustee, without a showing of cause, "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor." 11 U.S.C. § 1104(a)(2).

61. Courts have substantial discretion whether to appoint a trustee under Section 1104(a)(2). *Bellevue*, 171 B.R. at 623. The standards under Section 1104(a)(2) are more flexible than those under Section 1104(a)(1). *LHC*, 497 B.R. at 293.

62. In determining whether a trustee should be appointed under Section 1104(a)(2), "the factors that have been considered include: (1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for rehabilitation; (3) whether the business community and creditors of the estate have confidence in the debtor; and (4) whether the benefits outweigh the costs." *LHC*, 497 B.R. at 293 *citing In re Madison Mgmt. Grp., Inc.*, 137 B.R. 275, 282 (Bankr. N.D. Ill. 1992). "'The duties to avoid self-dealing, conflicts of interest and the appearance of impropriety are encompassed in the concept of duty of loyalty.' If the debtor clearly appears incapable of discharging those duties, appointment of a trustee is not only warranted but required." *LHC*, 497 B.R. at 293 (citation omitted).

13

63. As set forth above, the Debtor's representatives do not appear to understand the Debtor's operations. Compounding that concern, based upon the multiple discrepancies from the MOR, the Schedules and SOFA, and the 341 Meeting, the Debtor is not trustworthy, does not understand how to operate its business, or does not understand how to be a debtor in possession. *See Woodlawn*, 613 B.R. at 688 ("A number of factors inform the decision, including a debtor's trustworthiness, the debtor's performance and likelihood of rehabilitation, the confidence of creditors. . ."); *see also*, *In re Madison Mgmt Group, Inc.*, 137 B.R. 275, 282 (Bankr. N.D. Ill. 1992) (because of appearance of impropriety, Court appointed a trustee with limited powers to investigate transactions with related parties).

64. The benefit of a trustee outweighs the cost of appointing one. The integrity of the bankruptcy system is at stake and must be protected from a Debtor that does not concern itself with the accuracy of its bankruptcy documents or its testimony at its 341 Meeting – all of which were provided under penalty of perjury. And, if the value for the property provided in the MOR is correct, there appears to be equity in the real property for the Debtor's creditors.

**Cause Exists to Convert This Case to Chapter 7 or Dismiss It**

65. The question of whether conversion or dismissal is in the best interests of creditors and the estate is a question committed to the discretion of the bankruptcy court. *In re Aurora Memory Care, LLC*, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018) ("*Aurora Memory*"). In answering that question, courts often weigh which course of action will lead to the largest number of creditors receiving the most amount of money in the shortest period of time. *Aurora Memory*, 589 B.R. at 643. Courts also compare how creditors would fare trying to collect from the debtor in bankruptcy court as opposed to outside of bankruptcy. *Id*. In comparing those two scenarios, a key question is

14

the availability of estate assets for a bankruptcy trustee to liquidate and use to pay creditors the money the debtor owes them. *Id*.

66. In this case, there may be assets which would provide for a dividend to unsecured creditors. Based on the appraisal provided by the Debtor, there may be value here for unsecured creditors.

67. If the Court does not appoint a chapter 11 trustee, the case should be converted to one under chapter 7 and a trustee should be appointed to investigate the Debtor's assets, including the real property.

WHEREFORE, the U.S. Trustee requests that this Court enter an order appointing a chapter 11 trustee, or in the alternative, converting this case to one under chapter 7 and for such other relief as is equitable and just.

RESPECTFULLY SUBMITTED:
PATRICK S. LAYNG
UNITED STATES TRUSTEE

DATED: September 21, 2021

*/s/ Jeffrey L. Gansberg*
Jeffrey L. Gansberg, Trial Attorney
Office of the United States Trustee
219 South Dearborn, Room 873
Chicago, Illinois 60604
(312) 886-3327