EXHIBIT

A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Town & Country Partners LLC, | Case No. 21-08430 |
| Debtor. | Hon. Jacqueline P. Cox |

**AGREED FINAL ORDER (A) AUTHORIZING CHAPTER 11 TRUSTEE TO USE
CASH COLLATERAL, (B) AUTHORIZING CHAPTER 11 TRUSTEE TO OBTAIN
POSTPETITION FINANCING, (C) GRANTING ADEQUATE PROTECTION, AND (D)
GRANTING RELATED RELIEF**

**THIS MATTER COMING TO BE HEARD UPON** the motion [Docket No. ---] (the "**Motion**") filed by N. Neville Reid, not individually, but solely as the duly appointed and acting Chapter 11 trustee (the "**Trustee**") of Town & Country Partners LLC ("**Debtor**"); the Trustee seeking entry of a final order (i) authorizing the Trustee to use cash collateral of Toorak Capital Partners LLC ("**Lender**"), (ii) authorizing the Trustee to obtain postpetition financing from Lender on a priming, superpriority basis, (iii) granting adequate protection, and (iv) granting related relief; due and proper notice of the Motion having been given under the circumstances; the Court having reviewed the legal and factual bases set forth in the Motion; the Trustee and Lender being in agreement; and the Court having found that good cause exists to grant the relief requested in the Motion as set forth herein;

**THE TRUSTEE AND LENDER HEREBY STIPULATE, AND THE COURT HEREBY FINDS, THAT:**

A.      On July 14, 2021 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Case**").

80882548.3

B.      Debtor owns certain real and personal property located and commonly known as 2400 Dixie Drive, Portage, Indiana 46368 and 6201-6055 Canden Avenue, Portage, Indiana 46368 (the "**Property**").

A.      After the Petition Date, Debtor operated its business as a debtor and debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

B.      On October 5, 2021, the Court entered that certain *Interim Order (A) Authorizing the Debtor's Use of Cash Collateral; and (B) Granting Adequate Protection* (the "**Original Cash Collateral Order**"), pursuant to which the Court, among other things, authorized Debtor to use cash collateral pursuant to the limited terms and conditions set forth therein, which included, among other things, that Debtor's authority to use cash collateral would expire at 5:00 p.m. (CT) on October 12, 2021.

C.      On October 12, 2021, the Court entered its *Order Concluding Cash Collateral Motion*, providing that the Debtor's limited authority to use Lender's cash collateral terminated and expired on October 12, 2021, at 5:00 p.m. (CT).

D.      On October 13, 2021, the Court entered its *Order Granting the United States Trustee's Motion to Appoint Chapter 11 Trustee, or, in the alternative, Convert Case to One Under Chapter 7 and Appointing Chapter 11 Trustee* [Docket No. 56].

E.      On October 26, 2021, the Court entered an order approving the appointment of the Trustee as the Chapter 11 trustee for Debtor. *See* Docket No. 58.

F.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

G.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

H.      Prior to the Petition Date, Triumph Capital Partners LLC ("**Original Lender**") made certain loans and other financial accommodations to Debtor, and in connection therewith, entered into certain loan documents, including, without limitation, the following:

1.      On or about June 7, 2019, Debtor signed and delivered to Original Lender that certain Promissory Note in the original principal amount of $7,280,000.00 (the "**Note**") evidencing a loan and other financial accommodations to Debtor (the "**Loan**"); and

2.      On or about June 7, 2019, to secure the obligations in the Note and related obligations, Debtor executed and delivered to Original Lender that certain Mortgage and Security Agreement (the "**Mortgage**") pursuant to which Debtor granted Original Lender a first-priority mortgage lien against the Property. The Mortgage was duly recorded against the Property. The Note, Mortgage, and all other documents, instruments and agreements executed in connection with, evidencing, or securing repayment of the Loan, as heretofore modified, ratified and confirmed are collectively referred to herein as the "**Loan Documents**."

I.      Lender is the current holder, by assignment, of the Note, Mortgage, and the other Loan Documents.

J.      Prior to the Petition Date, Debtor defaulted on its obligations arising under the Loan Documents, which included, among other things, the failure to pay amounts owed under the Note for the month of December 2019, and each month thereafter.

K.      As a result of the defaults under the Loan Documents, on March 20, 2020, Lender filed an action to, among other things, foreclose the Mortgage against the Property in the Porter County, Indiana Circuit Court (the "**State Court**") captioned *Toorak Capital Partners, LLC v.*

3

*Town and Country Partners, LLC, et al.,* Case No. 64D02-2003-MF-002648 (the "**State Court Proceeding**").

L.      On July 1, 2021, the State Court held a hearing on Lender's Partial Motion for Summary Judgment with respect to Count I of Lender's complaint for Debtor's breach of the Note, and on Count II of Lender's complaint for foreclosure of the Mortgage. At the conclusion of the hearing, the State Court announced it would grant summary judgment on these Counts in favor of Lender. Before the State Court could enter an order, Debtor filed this Bankruptcy Case.

M.      The Debtor's obligations under the Loan Documents are secured by various liens, pledges, assignments, mortgages, and security interests described and granted or conveyed in or evidenced or perfected by one or more of the Loan Documents (the "**Prepetition Liens**") in, to, and against all of Debtor's assets and property, including, without limitation, the Property, together with the proceeds thereof, all as more particularly described in and evidenced by the Loan Documents, and all revenues generated by the lease, sale, or use thereof (collectively, the "**Collateral**"), some of which constitutes "cash collateral" within the meaning of Section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

N.      As of the Petition Date, the Prepetition Liens are first priority liens as to all of the Collateral.

O.      As of the Petition Date, the allowed amount of Lender's secured claim against Debtor and its Property and other assets as set forth in Lender's Proof of Claim (No. 2) (as may be thereafter amended, "**Lender's POC**") is $9,467,859.51, exclusive of certain costs, expenses, and attorneys' fees incurred by Lender as of the Petition Date. Lender shall have the right to amend Lender's POC to include such additional costs, expenses, and attorneys' fees. No objection has

4

been filed to Lender's POC.  Lender represents and warrants that the information in the Lender's POC is true, accurate and complete as of the date thereof.

P.      If and to the extent that the value of the Collateral exceeds Lender's POC, Lender is entitled to payment of interest and fees, costs, and other charges accrued or incurred on and after the Petition Date pursuant to Section 506(b) of the Bankruptcy Code.

Q.      The existing indebtedness owing by Debtor to Lender pursuant to the Loan Documents constitutes the legal, valid, binding, and enforceable obligation of Debtor, the Loan Documents are valid and enforceable against Debtor in accordance with their terms, and the Prepetition Liens of Lender in, to, and against all of the Collateral are valid, enforceable, properly perfected, and first priority liens.

R.      Lender is entitled to adequate protection of its interests in the prepetition Collateral and Cash Collateral, and the Trustee may not use the Cash Collateral for any purpose without Lender's consent or upon order of the Court.

S.      Effective solely as of the Trustee Review Period Expiration Date (as defined herein), and not before, Trustee, on behalf of himself and Debtor's estate, does not have, and hereby releases, and is forever barred from asserting any and all claims, counterclaims, causes of action, defenses, or setoff rights against Lender and its affiliates, subsidiaries, agents, officers, directors, employees, professionals, advisors, predecessors-in-interest, successors-in-interest, and assigns (collectively, "**Lender Representatives**") relating to any and all actions or inactions of Lender or otherwise that occurred or arose prior to the Petition Date and that relate to Debtor, the Loan Documents, the Prepetition Liens, Lender's POC, the Property, or otherwise (collectively, the "**Subject Claims**").  For purposes hereof, the term "**Trustee Review Period Expiration Date**" shall mean the date (i) which is forty-five (45) days after the date of entry of this Order and (ii) on

80882548.3
4278380 v1 - 08036 / 003

which there is no complaint or cause of action pending that has been filed by the Trustee against Lender or any Lender Representative asserting any Subject Claim.

T.     Based on the advice of his professionals, including his court-approved property manager 33 Realty (the "**Property Manager**"), the Trustee has concluded that the Property does not presently generate sufficient cash flow to cover recurring expenses necessary to maintain it. Lender has reviewed the Budget (as defined herein) and conferred with the Trustee and the Property Manager, and likewise has concluded with the Trustee that both the use of Cash Collateral and the financing authorized herein are necessary to enable the Trustee to operate the Debtor during the pendency of this case, maximize the value of the Property and effect an orderly and fair disposition thereof.

U.     The Trustee has requested entry of this Order as a final Order pursuant to Bankruptcy Rule 4001.

V.     The Trustee is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code sufficient to finance the operations of Debtor's business and administration of Debtor's estate. Except as provided below, the Trustee is presently unable to obtain credit allowable under Sections 364(c)(1), (c)(2), or (c)(3) of the Bankruptcy Code on terms more favorable than those offered by Lender. Lender has not agreed to grant a first priority lien to another lender on its Collateral in order to support alternative financing of the Debtor's operations.

W.     The terms of this Order have been negotiated in good faith and at arms' length.

X.     Under the circumstances of the Bankruptcy Case, the terms and conditions of this Order are a fair and reasonable response to the Trustee's request for Lender to consent to the use of Cash Collateral and provide to the Trustee postpetition financing, and the entry of this Order is in the best interests of Debtor's estate and its creditors.

80882548.3
4278380 v1 - 08036 / 003

Y.      The notice provided by the Trustee of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001, and 9014, and Sections 102(1), 363, and 364 of the Bankruptcy Code, and were otherwise sufficient and appropriate under the circumstances.

Z.      Good cause exists for approval of this Order.

**IT IS HEREBY ORDERED THAT:**

1.      **Motion Granted**. The relief requested in the Motion is granted on a final basis as set forth herein.

2.      **Incorporation of Findings and Conclusions**. The paragraphs contained in the foregoing preamble and findings and conclusions (the "**Preamble**"), if any, are incorporated by reference in this Order, and the Trustee and Lender consent and stipulate to the facts contained in such Preamble and findings and to the entry of this Order.

3.      **Term of Effectiveness of this Order**. This Order shall become effective immediately upon the entry hereof. Unless Lender otherwise agrees in writing, the termination of this Order and the Trustee's right to use the Cash Collateral and obtain Postpetition Advances (as defined herein) from Lender pursuant hereto shall terminate on the earlier of the following dates (the "**Termination Date**"):

      a.      the date that is thirty (30) days after the entry of this order if the Court has not entered an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, and upon such conversion, a Chapter 7 Trustee is appointed for the Debtor's estate other than the Trustee;

80882548.3
4278380 v1 - 08036 / 003

b.      the date an order is entered by the Court granting Lender, or any other creditor, relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession, or other proceeding against any or all of the Collateral;

c.      the date an order is entered by the Court granting a motion to dismiss the Bankruptcy Case;

d.      the date on which this Order is reversed, revoked, modified, amended, stayed, rescinded, or supplemented;

e.      the date on which either the Trustee, Debtor, or any other representative of Debtor or its estate shall grant any security interest in or lien on the assets or property of Debtor or its estate senior to Lender's Prepetition Liens on the assets and property of Debtor, other than the Postpetition Liens (as defined herein) created in favor of Lender pursuant to this Order;

f.      the date on which any party files or otherwise asserts (i) any objection in the Bankruptcy Case to the validity, amount, allocability, unavoidability, perfection, or priority of Lender's POC and/or Lender's Prepetition Liens as set forth herein or (ii) any complaint or other action against Lender seeking to impose liability on Lender for any action or inaction of Lender related to the Debtor and/or the Loan Documents, including, without limitation, a Subject Claim;

g.      the date on which the Court confirms a plan of reorganization that impairs (as defined in Section 1124 of the Bankruptcy Code) Lender's rights under the Loan Documents;

h.      the date upon which the Trustee and Lender agree in writing to such termination;

8

i.      the closing date of the sale of the Property as provided in Paragraph 26(h)

herein; and

j.      the date five (5) business days after receipt of notice from Lender by the

Trustee, the U.S. Trustee, and any committee appointed in the Bankruptcy Case of Lender's

intent to terminate its consent to use of Cash Collateral and cease making Postpetition

Advances pursuant to this Order on account of the occurrence of any Event of Default (as

defined herein), unless such Event of Default is expressly and specifically waived in

writing by Lender or has been cured prior to the expiration of such five (5) business day

notice period. For purposes hereof, "business day" or "Business Day" shall mean any day

of the week other than Saturday, Sunday and days on which federally insured banks and

financial institutions are generally closed for business.

In the event of any disagreement or dispute between the Trustee and Lender as to whether an Event

of Default has occurred hereunder, the Trustee may seek authority on an expedited basis to

continue to use the Cash Collateral on the terms provided in this Order until such time as the Court

resolves such disagreement or dispute. Upon the Termination Date, and subject to the Carve-Out

(as defined herein), Lender objects to any subsequent use of the Cash Collateral, and the Trustee's

authorization to use the Cash Collateral for any purpose is terminated. Upon the Termination Date,

and subject to the Carve-Out, the Trustee shall immediately account for and turn over to Lender

all the Cash Collateral then possessed or thereafter acquired by the Trustee or Debtor.

4.      **Use of Cash Collateral/Budget**. Pursuant to Section 363 of the Bankruptcy Code,

the Trustee is authorized to use the Cash Collateral only as provided in this Order, as follows:

a.      The Trustee is authorized to use Cash Collateral only (i) to pay actual,

ordinary, and necessary operating expenses of Debtor and its estate for the purposes and

up to the Monthly Amounts set forth in the budget attached hereto as **Exhibit A** (as it may be amended from time to time pursuant to the terms hereof, the "**Budget**"), and (ii) to pay any other expenses approved by the prior written consent of Lender (together with all expenses and costs listed in the Budget, the "**Approved Expenses**"), in its sole and absolute discretion. "**Monthly Amounts**" means the aggregate total amounts designated to be paid or accrued by the Trustee on behalf of Debtor and its estate during a calendar month for a specific line item in the Budget or to a payee as designated in this Order. Any and all costs, liabilities and expenditures approved by Lender in writing, whether or not listed in the Budget, shall be deemed Approved Expenses for all purposes hereof.  Notwithstanding anything to the contrary herein, the Trustee shall not use more than $5,000.00 of Cash Collateral and/or Postpetition Advances (or the proceeds thereof) to investigate any Subject Claims against Lender, and shall not use any Cash Collateral and/or Postpetition Advances (or the proceeds thereof) to assert, file or otherwise prosecute any Subject Claims against Lender.

b.      To the extent that the Trustee seeks to modify or extend the Budget, beginning on the 15th day of the last month set forth in the Budget, and continuing on the 15th day of the last month set forth in any future applicable Monthly Budget (as defined herein), the Trustee shall deliver a proposed monthly budget (the "**Monthly Budget**") to Lender that sets forth all anticipated monthly postpetition revenues, expenses, and reserves for any unanticipated expenses that will be incurred on behalf of Debtor and its estate during the next successive month(s). Each new Monthly Budget shall be delivered to Lender on or before the 15th day of the last month for which the then current Budget or Monthly Budget (whichever is applicable) applies. After receipt of each Monthly Budget,

10

Lender shall have five (5) business days to approve or object to the Monthly Budget. Any such objection by Lender shall be in writing and shall specify the particular item(s) and amount(s) objected to and reasons for the objection. If Lender objects to a Monthly Budget or item or amount therein, unless the Trustee and Lender agree otherwise, the Trustee may not make any Cash Collateral expenditure objected to by Lender unless or until the Trustee obtains the Court's authorization to make such expenditure. The Trustee may seek authority to make such expenditure on an expedited basis.

c.    The use of Cash Collateral to pay any expense in excess of the approved Monthly Amounts shall require the prior written approval of Lender, or further order of the Court with appropriate notice to Lender; provided, however, that the Trustee may use Cash Collateral to pay amounts in any category in excess of the budgeted amounts by up to but not greater than ten percent (10%) such that the total amount by which the Budget or Monthly Budget is exceeded for a calendar month will not exceed, in the aggregate, ten percent (10%) over the budgeted amount.

d.    Notwithstanding the foregoing, the Trustee shall not make any transfer of Cash Collateral in excess of $5,000.00 to any transferee (or multiple transfers to any transferee that, in the aggregate, exceed $5,000.00 in a 30-day period) without the express consent of Lender or further order of the Court, unless such transfer is specifically set forth in the Budget.

5.    **Cash Collateral Account and Commingling Prohibition/Deposit in Approved Account(s)**. The Trustee shall maintain an operating account that is compliant with Section 345 of the Bankruptcy Code and, to the extent such operating account is not compliant with Section 345, such account must be expressly authorized by order of the Court (the "**Cash Collateral**

80882548.3
4278380 v1 - 08036 / 003

**Account**"), into which all Cash Collateral shall be deposited and from which payments and transfers authorized by this Order shall be made; provided, however, that (i) in order to facilitate management of the Property, the Property Manager may first collect revenues from the Property and temporarily hold such revenues, if necessary in an account controlled by Property Manager, but shall transmit such revenues to the Trustee for deposit into the Cash Collateral Account in the ordinary course as soon as practicable after receipt, (ii) the Trustee shall remit to the Property Manager in the ordinary course an amount of funds necessary to cover Approved Expenses, and deposit such funds into a sub-account controlled by Property Manager, in order to enable Property Manager to pay Approved Expenses or reimburse itself for Approved Expenses it paid with its own funds (the "**Operating Sub-Account**"); (iii) Property Manager may at any time use the funds in the Operating Sub-Account to pay Approved Expenses or expenses otherwise approved in writing by the Lender; and (iv) any and all funds and balances in the Operating Sub-Account not needed for operations of the Property in the discretion of the Trustee, after consultation with Property Manager, shall be deposited into the Cash Collateral Account. The Trustee shall have sole signature and other authority over the Cash Collateral Account and is prohibited from commingling the Cash Collateral with monies from any other source.

6.      **Insiders**. Except as may be provided in the Budget or as otherwise ordered by the Court, no Cash Collateral shall be used in payment of any kind whatsoever to Guarantors, Greg Perkins, current or former equity holders of Debtor, any of the agents, representatives, or professionals of Debtor, or any current or former insiders of Debtor, as that term is defined in Section 101(31) of the Bankruptcy Code (collectively, the "**Insiders**").

80882548.3
4278380 v1 - 08036 / 003

7.      **Capital Improvements**. Except to the extent expressly set forth in the Budget, the Trustee shall not make any capital improvement to Debtor's assets or property absent prior written consent of Lender or further order of the Court.

8.      **No Third Party Liens**. As set forth in Paragraph No. 3(e) above, this Order shall terminate if the Trustee grants any entity, other than Lender, a security interest in or lien on any of Debtor's assets, including Collateral, the Cash Collateral, and all other assets subject to the Prepetition Liens and the Postpetition Liens held by Lender provided for herein, without the prior express consent of Lender.

9.      **Postpetition Liens**. Notwithstanding anything in Section 552 of the Bankruptcy Code to the contrary, and pursuant to Section 364(d) of the Bankruptcy Code, and in addition to its Prepetition Liens under the existing Loan Documents with respect to the Collateral (which are fully reserved, and continue in full force and effect), subject only to the Carve-Out, Lender shall have and is hereby granted as and for, among other things, adequate protection (effective and continuing without the necessity of the execution, filing, and/or recordation of mortgages, deeds of trust, security agreements, deposit account control agreements, pledge agreements, financing statements, or otherwise), valid, binding, enforceable, and perfected continuing first-priority, priming, and superpriority liens and security interests (the "**Postpetition Liens**") in and on any and all of Debtor's now owned or after acquired real and personal property, tangible and intangible, equipment, accounts, accounts receivable, general intangibles, rents, income, profits, and other rights to payment of any type, and all proceeds of the foregoing, wherever located, to the same extent and validity held by Lender on the Petition Date, whether or not constituting prepetition or postpetition collateral; provided, however, that the Postpetition Liens do not encumber any avoidance or recovery actions pursuant to Sections 544, 545, 547, 548, 549, and 553(b) of the

80882548.3
4278380 v1 - 08036 / 003

Bankruptcy Code (collectively, "**Avoidance Actions**") and any proceeds therefrom. The Postpetition Liens granted to Lender will be evidenced by the existing Loan Documents and this Order. The Postpetition Liens will secure repayment of all (a) amounts owed under the Loan Documents as of the Petition Date, but will be limited in amount to the diminution in the value of the Collateral, including Cash Collateral, securing the indebtedness under the existing Loan Documents as of the Petition Date, and (b) Postpetition Advances (as defined herein) made by Lender to the Trustee, on behalf of Debtor and its estate, pursuant to Paragraph No. 19 below.

10. **Superpriority Administrative Expense Claim**. Subject only to the Carve-Out, Lender shall have an allowed superpriority administrative expense claim pursuant to Sections 364(d), 503(b), and 507(b) of the Bankruptcy Code senior to all other administrative expenses in the Bankruptcy Case to the extent (a) Lender's interest in the Cash Collateral is not adequately protected by the terms of this Order, and (b) Lender makes Postpetition Advances to the Trustee pursuant to Paragraph No. 19 below (collectively, the "**Superpriority Claim**").

11. **Administrative Expenses**. Except for the Carve-Out, the Trustee, for himself, his professionals and Debtor's estate, hereby waives any right or entitlement to (a) have the costs or expenses of administration or of preserving or disposing of the Collateral of the kind specified in Section 506(c) of the Bankruptcy Code, which have been or may be incurred in the Bankruptcy Case, any proceedings following conversion of the Bankruptcy Case pursuant to Section 1112 of the Bankruptcy Code, or in any other proceeding, to be assessed against Lender, the Collateral, or the Cash Collateral; and (b) any "equities of the case" claims or other claims under Sections 105(a) or 552(b) of the Bankruptcy Code. Upon entry of this Order, except for the Carve-Out, no costs or expenses of administration or other charge, lien, assessment, or claim incurred at any time (including, without limitation, any expenses set forth in the Budget) by the Trustee (or any other

14

party or entity) shall be imposed or charged against any or all of the Collateral, the Lender, or its claims or recoveries under the Bankruptcy Code, including Sections 105(a), 506(c), and 552(b) thereof, or otherwise, and the Trustee waives any such rights. It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the Budget, Lender has relied on the foregoing provisions of this Paragraph. Except for the Carve-Out or as otherwise agreed by Lender in writing, nothing in this Order shall constitute or be deemed to constitute the consent by Lender to the imposition of any costs or expense of administration or other charge, lien, assessment, or claim (including, without limitation, any amounts set forth in the Budget) against Lender, its claims, or its collateral under Sections 105(a), 506(c), and 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

12.    **Security Interest**. This Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of all of the Postpetition Liens upon the property of Debtor and its estate granted to Lender as set forth herein, without the necessity of filing, recording, or serving any financing statements or other documents that may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to Lender herein and the Loan Documents. If Lender shall, in its discretion, elect for any reason to file any such security interests and liens, the Trustee is hereby authorized and directed to execute, or cause to be executed, on behalf of Debtor, all such financing statements or other documents upon Lender's request, and the filing, recording, or service thereof (as the case may be) of such financing statement or similar documents shall be deemed to have been made at the time of and on the Petition Date. Lender may, in its discretion, file a copy of this Order in any filing or recording office in any county or other jurisdiction in which Debtor has real or personal

15

property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Order.

13.    **Financial Reporting**. As additional adequate protection, the Trustee shall provide to Lender, no later than the last calendar day of each month (a) a report of cash collections, outstanding accounts receivable (aged by payor source in a format that is consistent from month-to-month), accounts payable (by vendor that identifies the number of days each payable has been outstanding), and expenditures as of the end of the previous month, (b) an income and expense statement, and (c) copies of any state surveys or inspections of the Property. The foregoing reporting requirements shall supplement and be in addition to those financial reporting requirements contained in the Loan Documents (except as otherwise waived or agreed by the Lender in writing after consultation with the Trustee and Property Manager), all of which remain in full force and effect during the course of the Bankruptcy Case, and with which the Trustee shall comply during the course of the Bankruptcy Case. The Trustee shall provide any other financial reporting information reasonably requested by Lender within five (5) business days of such request.

14.    **Accounting, Information and Access**. As additional adequate protection, on the tenth (10th) Business Day of each calendar month after entry of this Order, the Trustee shall provide to Lender an accounting that includes the following: (a) the balance of the Cash Collateral in Debtor's accounts at the end of the prior calendar month; (b) all withdrawals of Cash Collateral from Debtor's accounts during the prior calendar month, and each of the payments funded with those withdrawals; (c) all deposits of Cash Collateral into Debtor's accounts during the prior calendar month (with a confirmation that all Cash Collateral received by the Trustee and/or Debtor during such calendar month was deposited in Debtor's accounts in accordance with this Order);

16

(d) the actual amounts collected and paid during the prior calendar month for each line item in the Budget; and (e) copies of invoices, with detailed time descriptions, from the Professional Persons (as defined herein) reflecting the professional services rendered and expenses and costs incurred by the Professional Persons (as defined herein) during the preceding calendar month redacted as necessary and appropriate to maintain confidentiality of protected and privileged information. In addition, the Trustee shall promptly provide to Lender (and in no event later than five (5) five business days after such request) all other financial information reasonably requested by Lender or its attorneys or other representatives, including, but not limited to, balance sheets, income statements, tax returns, and information regarding the Debtor's assets, liabilities, operations, and financial affairs. Further, without limiting the rights of access and information afforded Lender under the Loan Documents, upon seventy-two (72) hours advance notice from Lender, the Trustee shall provide representatives, agents, third-party contractors (including appraisers), and/or employees of Lender prompt and reasonable access to Debtor's premises and records, and shall otherwise cooperate, consult with, and provide to such persons all such non-privileged documentation and information not subject to a binding confidentiality agreement as they may reasonably request. The Trustee shall also provide to Lender, at the time filed or provided, all statements, schedules, or financial reports that the Trustee files in the Bankruptcy Case or provides to the United States Trustee in accordance with applicable Bankruptcy Rules, local bankruptcy rules, or guidelines of the United States Trustee. Moreover, on the first business day of each calendar week during the term of this Order, the Trustee shall provide to Lender copies of documents evidencing all receipts, withdrawals, transfers, or other dispositions of Cash Collateral during the preceding calendar week, including, without limitation, checks, wire transfer advice/confirmations, ACH confirmations, deposit statements or receipts, and other documents; as

80882548.3
4278380 v1 - 08036 / 003

well as a listing of anticipated expenditures for the upcoming week, including the payee, purpose, and amount of the anticipated expenditures. Finally, the Trustee shall consult with Lender from time to time (but not less than monthly) regarding the nature and extent of the professional services anticipated to be performed by the Trustee and/or Professional Persons (as defined herein) during the upcoming calendar month (or such other period as the parties may agree), which the Trustee believes will be necessary and appropriate to administer Debtor's estate prior to incurring fees and costs on account of such services; provided, however that any delay or failure of the Trustee to confer in advance with the Lender regarding any anticipated professional fees and expenses shall not constitute nor result in a waiver or forfeiture of such fees and expenses nor preclude the Trustee or any of his professionals from seeking allowance thereof at any time. For the avoidance of doubt, to the extent Trustee fails to confer with Lender regarding anticipated professional fees, Lender shall not be precluded from objecting to the allowance and payment of such professional fees.

15.     [Paragraph Intentionally Omitted]

16.     **Insurance**. The Trustee shall, as permitted by the applicable Budget and/or Monthly Budget (a) provide general comprehensive, hazard, and liability insurance coverage for the Collateral as required by the Loan Documents, naming Lender as loss payee, (b) promptly make all premium payments required to maintain said insurance, and (c) authorize and instruct all insurance companies providing such insurance to notify Lender of any failure to make any premium payment or other default under any such insurance policies. The Trustee shall provide to Lender copies of insurance binder(s), policy(ies), and other written evidence of said insurance coverage.

17.     [Paragraph Intentionally Blank]

80882548.3
4278380 v1 - 08036 / 003

18.    **Taxes**. Lender understands and acknowledges that as of the date hereof, according to public records, there are approximately $263,794 in unpaid property taxes levied against the Property, and that the Property does not currently generate sufficient cash to pay such taxes. Lender in its discretion may advance funds to the Estate under the financing facility hereinafter discussed, in order to enable the Trustee to pay any and all outstanding property taxes related to the Property (the "**Property Taxes**"), but the Trustee shall not be required to pay any Property Taxes during the term of this order unless the Lender advances sufficient funds to enable him to do so. Solely to the extent of available funds in the Estate, the Trustee shall use best efforts to remain current on all of Debtor's other postpetition tax obligations arising out of the ownership and/or operation of the Debtor's business. The Trustee shall tender evidence of payment of all such tax obligations to Lender upon the payment thereof. All Lender advances for taxes paid, whether paid directly by Lender or through the Trustee as set forth herein, shall be treated as a Postpetition Advances.

19.    **Postpetition Advances**. Upon entry of this Order, the Trustee is authorized, on behalf of Debtor and its estate, to obtain credit from and incur debt owing to Lender, including, without limitation, paying all interest, fees, costs, expenses (including reasonable attorneys' fees), and other obligations related thereto, pursuant to Section 364(d) of the Bankruptcy Code, as is reasonably necessary to enable the Trustee to make payments on behalf of Debtor and its estate pursuant to the Budget or Monthly Budget and as otherwise authorized under this Order (collectively, the "**Postpetition Advances**"), on the following terms:

a.    Lender acknowledges and agrees that Cash Collateral to date has not been sufficient to cover all Approved Expenses. Within five (5) Business Days after entry of this Order, Lender shall transfer to the Trustee $148,974.81 as a Postpetition Advance, consisting of $43,639.45 in Approved Expenses incurred by Property Manager through

November 30, 2021; $33,624.50 in Approved Expenses of the Trustee accrued through November 24, 2021, for legal fees and expenses related to services performed by his counsel Fox Swibel Levin & Carroll LLP ("**FSLC**"); $49,710.86 in additional Approved Expenses of Property Manager anticipated through December 31, 2021; and $14,000 in Approved Expenses of the Trustee for anticipated additional legal fees and expenses of FSLC and $8,000 in anticipated accounting expenses of the Trustee's accountant, KRD, Ltd. ("**KRD**"), in each case projected through December 31, 2021;

b.      Lender shall make further Postpetition Advances to, and as requested in writing by, the Trustee each month to the extent that the cumulative Postpetition Advances, the revenues that the Trustee expects to be generated by the Property that month and other estate funds are or will be insufficient to pay the operating and other expenses expressly set forth in the Budget or any subsequent Monthly Budget(s). Each written request by the Trustee for Lender to make a Postpetition Advance shall include such documentation required by Lender to substantiate the need for such Postpetition Advance. Subject to consultation between Lender and the Trustee, Lender shall  make the requested Postpetition Advance to the Trustee by no later than five (5) Business Days after receipt of such request, or on such later date as the Trustee shall approve in writing, which approval shall not be unreasonably withheld. Absent exigent circumstances, the Trustee will not request that Lender make more than one (1) Postpetition Advance per calendar month. Each Postpetition Advance shall be wired by Lender into the Cash Collateral Account;

c.      Unless authorized by further order of this Court and agreed to in writing by Lender, the aggregate principal amount of the Postpetition Advances outstanding at any given time shall not exceed $310,000.00;

d.    Notwithstanding the express terms of the Note and the other Loan Documents, the Postpetition Advances shall accrue interest at the rate of eleven and 49/100 percent (11.49%) per annum from the date of each advance through the date of repayment thereof, and the terms of the Note and the other Loan Documents are hereby deemed modified to be consistent herewith;

e.    The Postpetition Advances shall consist of protective advances made by Lender pursuant to and shall otherwise be governed by the terms and conditions of the existing Loan Documents unless expressly modified herein;

f.    Any defaults or Events of Default committed or permitted by Debtor under the Loan Documents prior to the date of the Trustee's appointment shall not constitute defaults or Events of Default for purposes of the Postpetition Advances made pursuant to the Loan Documents (as modified by this Order), and the categories of defaults and Events of Default set forth in Sections 3.1(h), (i), (l) and (m) of the Mortgage shall not be applicable to the Postpetition Advances hereunder;

g.    The Postpetition Advances shall be secured by the Postpetition Liens as set forth in Paragraph No. 9 above, and subject only to the Carve-Out, the Postpetition Liens securing the Postpetition Advances shall be senior to and have priority over all other liens, claims, and encumbrances against the Collateral, the Cash Collateral, and all other assets and property of Debtor's estate, including, without limitation, the Prepetition Liens held by Lender securing the indebtedness under the existing Loan Documents as of the Petition Date; provided, however, as stated, the Postpetition Liens do not encumber any Avoidance Actions;

80882548.3
4278380 v1 - 08036 / 003

h.    The Postpetition Advances shall also be secured by the Superpriority Claim as set forth in Paragraph No. 10 above, and subject only to the Carve-Out, the Superpriority Claim securing the Postpetition Advances shall be senior to and have priority over all other administrative expenses in the Bankruptcy Case;

i.    Notwithstanding the express terms of the Note and the other Loan Documents, the Postpetition Advances shall be repaid at such times and in such manners as provided in Paragraphs 20 and 26(h) below; and

j.    For the avoidance of doubt, the Carve-Out, including any and all Approved Expenses accrued through any Termination Date, shall be paid first from all Postpetition Advances, Cash Collateral and other estate funds, free and clear of any liens of Lender and before any payments to Lender for any indebtedness owed Lender, notwithstanding any actual or potential administrative insolvency of the Estate.

20.    [Paragraph Intentionally Omitted]

21.    **Monthly Repayments on Postpetition Advances**. To the extent that Lender makes Postpetition Advances pursuant to the terms set forth in Paragraph No. 19 above, the Trustee shall make monthly payments to Lender to repay such Postpetition Advances, plus accrued interest thereon, whether in whole or in part, in an amount equal to: (a) 50% of the amount of available Cash Collateral, if any, in excess of 125% of the Cash Collateral required to satisfy the expenses for the current month under the Budget or Monthly Budget then in place; or (b) such other amount as may be agreed to from time to time by the Trustee and Lender. Such monthly payments shall be made on or before the fifth (5th) business day of each month.

22.    **Carve-Out**. Notwithstanding anything to the contrary in this Order, the Prepetition Liens, the Postpetition Liens, and the Superpriority Claim granted in favor of Lender pursuant to

80882548.3
4278380 v1 - 08036 / 003

Paragraph Nos. 9, 10, and 19 above, shall at all times all be subject and subordinate to the payment

of the following (the "**Carve-Out**"), notwithstanding any lack of adequate protection as may occur

with respect to any Collateral at any time:

      a.      the total compensation and reimbursement of expenses of the Trustee and

such professional persons retained by the Trustee as authorized by order of the Court

pursuant to Section 327 of the Bankruptcy Code, including without limitation FSLC and

KRD (collectively, "**Professional Persons**") that are accrued but unpaid as of the

Termination Date and that are allowed by final order of the Court under Sections 503(b)(2),

326, 328, 330, and/or 331 of the Bankruptcy Code, but only to the extent that such total

allowed compensation and reimbursement of expenses does not exceed the corresponding

aggregate amount(s) on account thereof set forth in the Budget and any applicable

subsequent Monthly Budget(s); provided, however, that the Trustee shall under all

circumstances be paid the full commission he is entitled to receive under Section 326 of

the Bankruptcy Code upon disposition of the Property notwithstanding that such

commission cannot be calculated prior to such disposition and is therefore not in the

Budget;

      b.      fees required to be paid to the Clerk of the Court;

      c.      all Approved Expenses, not otherwise identified in this Paragraph;

      d.      quarterly fees required to be paid to the U.S. Trustee pursuant to 28 U.S.C.

§ 1930(a)(6);

      e.      an amount of cash equal to twenty percent (20%) of the Excess Net Purchase

Price Proceeds (as defined herein), if any, paid by the Winning Bidder (as defined herein)

for the Property, as a reserve for unsecured creditors of Debtors' estate (subject to payment

80882548.3
4278380 v1 - 08036 / 003

of Chapter 7 administrative expenses payable ahead of unsecured claims under the Bankruptcy Code), up to a total of $200,000.00 (the "**Unsecureds Carve-Out**").  For purposes hereof, the term "**Excess Net Purchase Price Proceeds**" shall mean the extent to which, if at all, (1) the gross cash sale price for the Property as set forth in the Sale Contract (as defined herein) (or pursuant to any higher bid for the Property that is acceptable to Lender), less the sum of (i) all closing costs incurred and payable relating to the sale of the Property, (ii) any and all deductions, credits or offsets due to the Winning Bidder under the terms of the Sale Contract or otherwise which cause the gross sale price to be reduced, (iii) all Property Taxes assessed against or otherwise payable from the Property as of the date of the sale closing, (iv) all Postpetition Advances and interest accrued thereon outstanding as of the date of the sale closing, and (v) Lender's attorneys' fees, costs and expenses related to or arising from the negotiation and consummation of the sale of the Property, exceeds (2) the sum of $8 million.  Notwithstanding anything to the contrary herein, if the Trustee asserts, files or otherwise prosecutes any Subject Claim against Lender at any time, there shall be no Unsecureds Carve-Out under any circumstances, and the foregoing provisions of this Paragraph 22(e) shall be null and void ab initio;

f.      any other actual, necessary, and allowable accrued but unpaid administrative expenses incurred by the Trustee or Debtor's estate on or prior to the Termination Date that are (i) expressly provided for in the then-applicable (or prior) Budget or Monthly Budget(s), or (ii) not expressly provided for in the then-applicable (or prior) Budget or Monthly Budget(s), but are of the same type and amount of expense provided for in such budget(s) and were not included therein solely because the invoice or bill

24

evidencing such accrued but unpaid expenses would not have been due and payable until a future budget period; and

g.      up to an additional $25,000 of (i) compensation and reimbursement of expenses of the Trustee and Professional Persons that are allowed by final order of the Court under Sections 503(b)(2), 326, 328, 330, and/or 331 of the Bankruptcy Code that accrue after the Termination Date necessary to enable the Trustee to wind down the affairs of Debtor's estate after the Termination Date, and (ii) other actual necessary administrative expenses incurred by the Trustee after the Termination Date that are incidental to the Trustee's winding down of the affairs of Debtor's estate.

Notwithstanding anything to the contrary in this Order, no proceeds of the Collateral, the Cash Collateral, or the Postpetition Advances may be used to pay the fees and expenses of any Professional Persons, or any other costs, incurred in connection with: (a) commencing or continuing any claims, causes of action, or contested matters against Lender, including discovery proceedings subsequent to the commencement of any such claims, causes of action, or contested matters; or (b) any other purpose prohibited by this Order.

23.    **Default**. An Event of Default shall be deemed to have occurred under this Order, upon the occurrence of any one or more of the following:

a.      Upon Lender's provision of written notice of the Trustee's failure to perform in accordance with any of the terms and conditions of this Order, unless such failure to perform is cured no later than five (5) business days after receipt of such written notice;

b.      The termination, expiration, lapsing, or reduction of insurance coverage on the Collateral;

80882548.3
4278380 v1 - 08036 / 003

c.      Payment of any amounts of Cash Collateral to any Insider that is not set forth in the Budget or Monthly Budget; or

d.      Payment of any amount not contemplated by the Budget, Monthly Amount, or this Order, without prior Lender consent or Court approval.

24.      **Binding on Successors and Assigns**. The provisions of this Order shall inure to the benefit of, and shall be binding upon, the Trustee, Debtor, and Lender and their respective successors and assigns, including, but not limited to, any other trustee or representative now or hereafter appointed as a legal representative of Debtor, or its estate, in the Bankruptcy Case, and shall be binding on all creditors and other parties in interest.

25.      **Survival of Provisions**. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order dismissing the Bankruptcy Case, converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, or that may be entered confirming or consummating any plan of reorganization of Debtor's estate, and the terms and provisions of this Order as well as the priorities in payment, liens, and security interests granted pursuant to this Order shall continue in this or any superseding cases under the Bankruptcy Code, and such priorities in payment, liens, and security interests shall maintain its priority as provided by this Order until all indebtedness due Lender is indefeasibly satisfied and discharged.

26.      **Reservation of Rights**. Nothing in this Order will be deemed or construed as an admission or waiver by Lender as to adequate protection, or any other issue in the Bankruptcy Case, and this Order will not constitute consent by Lender to the use of its Cash Collateral other than for the limited purpose and during the limited period expressly provided herein. In addition, nothing contained in this Order will prejudice the rights of Lender to: (i) withdraw its consent to the Trustee's use of Cash Collateral, and seek to obtain the Court's order prohibiting use of Cash

26

Collateral, after the Termination Date (but not before); (ii) seek relief from the automatic stay of Section 362(a) of the Bankruptcy Code; (iii) oppose the sale or disposition of any asset pursuant to Section 363 of the Bankruptcy Code; (iv) oppose confirmation of any plan of reorganization filed by the Trustee, Debtor, or any other party in interest; (v) file its own plan of reorganization or liquidation on behalf of Debtor and its estate; (vi) seek a dismissal of the Bankruptcy Case pursuant to Section 1112 of the Bankruptcy Code; (vii) seek allowance of an administrative claim or additional adequate protection in connection with the use of Lender's Cash Collateral; (viii) seek to convert the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code pursuant to Section 1112 of the Bankruptcy Code; or (ix) seek any other relief that Lender may deem necessary and appropriate under the circumstances. Except as expressly set forth herein, all of Lenders' rights and remedies under the Loan Documents, and otherwise, are preserved.

27.    **Sale of Property.** Notwithstanding anything to the contrary herein, the Trustee's right to use Cash Collateral and/or obtain Postpetition Advances as set forth herein shall, unless otherwise agreed in writing by the Trustee and Lender, automatically terminate immediately upon the earlier to occur of the following:

a.    The Trustee does not commence active marketing of the Property for sale on or before January 31, 2022;

b.    The Trustee does not solicit and receive letters of intent, bids, or offers for the purchase of the Property from third party bidders on or before March 11, 2022;

c.    The Trustee does not (i) negotiate the highest and best offer among the third party bidders, (ii) enter into a contract for the sale of the Property on terms acceptable to Lender in its sole and absolute discretion (the "**Sale Contract**") with the winning bidder (the "**Winning Bidder**"), and (iii) file a motion to approve the sale of the Property to the

27

Winning Bidder under the Sale Contract pursuant to Section 363(f) of the Bankruptcy Code (the "**Sale Motion**"), all on or before March 22, 2022;

d.      The Trustee does not cause the Court to enter any order reasonably acceptable to Lender granting the Sale Motion and approving the sale of the Property to the Winning Bidder pursuant to the Sale Contract (or pursuant to any higher bid for the Property that is acceptable to Lender) on or before April 15, 2022; and

e.      The Trustee does not close the sale of the Property to the Winning Bidder pursuant to the Sale Contract (or pursuant to any higher bid for the Property that is reasonably acceptable to Lender), and cause the proceeds of such sale (net of reasonable, customary closing costs and any necessary reserve to fund the Carveout) to be paid and turned over to Lender at the closing to the extent required to pay or repay in full the Postpetition Advances, Lender's POC, and if applicable, Lender's right to interest, fees, costs, and other charges under Bankruptcy Section 506(b), on or before April 29, 2022.

28.      **Retroactive**. This Order shall be retroactive to October 26, 2021, so that all uses of Cash Collateral by the Trustee shall be deemed approved hereby or otherwise consented to by the Lender.

29.      **Notice.** The Trustee shall serve a copy of this Order, via regular first-class mail, on Lender by its counsel, all secured and unsecured creditors, any counsel to any committee appointed in the Bankruptcy Case, those parties having filed a notice of appearance and demand or request for service, and the Office of the United States Trustee, within three (3) business days of the entry hereof. To the extent further notice is required under the terms of this Order, notice shall be provided via: (i) electronic mail; and (ii) overnight mail or regular first-class U.S. mail, postage paid, at the following addresses:

80882548.3
4278380 v1 - 08036 / 003

If to Trustee:              N. Neville Reid
                            Fox Swibel Levin & Carroll LLP
                            200 W. Madison Street, Suite 3000
                            Chicago, Illinois 60606
                            Email: nreid@foxswibel.com

                            with a copy to:

                            Ryan T. Schultz
                            Fox Swibel Levin & Carroll LLP
                            200 W. Madison St., Suite 3000
                            Chicago, IL  60606
                            Email:  rschultz@foxswibel.com


If to Lender:               Jerry L. Switzer, Jr.
                            Polsinelli PC
                            150 N. Riverside Plaza, Suite 3000
                            Chicago, Illinois 60606
                            Email: jswitzer@polsinelli.com


                            ENTER:


                            _____
                            United States Bankruptcy Judge


29

Prepared and agreed to by:

Jerry L. Switzer, Jr.
Trinitee G. Green
POLSINELLI PC
161 N. Clark Street, Suite 4200
Chicago, Illinois 60601
Telephone: (312) 819-1900
Facsimile: (312) 819-1910
jswitzer@polsinelli.com
tggreen@polsinelli.com

-and-

Ryan T. Schultz
Fox Swibel Levin & Carroll LLP
200 W. Madison Street, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 224-1200
Facsimile: (312) 224-1201
rschultz@foxswibel.com

80882548.3
4278380 v1 - 08036 / 003

# EXHIBIT A – BUDGET

## Town & Country Apartments

**Period Beginning: Nov 2021**
**Period Ending: April 2022**

| Account Name | November | December | January | February | March | April | Nov-April Total |
|---|---|---|---|---|---|---|---|
| **Operating Income & Expense** | | | | | | | |
| **INCOME** | | | | | | | |
| Gross Rent | 21,000.00 | 30,000.00 | 45,000.00 | 50,000.00 | 55,000.00 | 57,500.00 | 258,500.00 |
| Delinquency | (3,150.00) | (4,500.00) | (6,750.00) | (7,500.00) | (8,250.00) | (8,625.00) | (38,775.00) |
| IN Rental Assistance | | | | 2,000.00 | 2,000.00 | 2,000.00 | 6,000.00 |
| **Total Operating Income** | **17,850.00** | **25,500.00** | **38,250.00** | **44,500.00** | **48,750.00** | **50,875.00** | **225,725.00** |
| **EXPENSES** | | | | | | | |
| **Marketing** | | | | | | | |
| Leasing Commissions | - | | 5,435.64 | 5,435.64 | - | - | 10,871.29 |
| **Total Marketing** | **-** | **-** | **5,435.64** | **5,435.64** | **-** | **-** | **10,871.29** |
| **Turnover** | | | | | | | |
| Turnover | - | - | 12,500.00 | 12,500.00 | - | - | 25,000.00 |
| Turnover Expense - Other | - | 15,000.00 | 15,000.00 | - | - | - | 30,000.00 |
| Lease Renewal Fee | - | 750.00 | 750.00 | 750.00 | - | - | 2,250.00 |
| **Total Turnover** | **-** | **15,750.00** | **28,250.00** | **13,250.00** | **-** | **-** | **57,250.00** |
| **Repair & Maintenance** | | | | | | | |
| Maintenace Salary | 5,416.67 | 5,416.67 | 5,416.67 | 5,416.67 | 5,416.67 | 5,416.67 | 32,500.00 |
| Maintenace Payroll & Taxes | 1,354.17 | 1,354.17 | 1,354.17 | 1,354.17 | 1,354.17 | 1,354.17 | 8,125.00 |
| R&M | 8,333.33 | 6,250.00 | 6,250.00 | 6,250.00 | 3,125.00 | 3,125.00 | 33,333.33 |
| Roof- R&M | 7,500.00 | 7,500.00 | - | - | - | - | 15,000.00 |
| Plumbing R&M | 10,000.00 | - | - | - | - | - | 10,000.00 |
| R&M -Supplies | 1,250.00 | 1,250.00 | 1,250.00 | 625.00 | 625.00 | 625.00 | 5,625.00 |
| **Total R&M** | **33,854.17** | **21,770.83** | **14,270.83** | **13,645.83** | **3,750.00** | **3,750.00** | **104,583.33** |
| **Contract Services** | | | | | | | |
| Snow Removal Contract Services | - | 3,000.00 | 3,000.00 | 3,000.00 | - | - | 9,000.00 |
| Landscaping | 1,500.00 | - | - | - | - | 3,000.00 | 4,500.00 |
| Garbage and Recycling | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 825.00 | 4,950.00 |
| Fire Monitoring | 1,500.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,500.00 |
| **Total Contract Services** | **3,825.00** | **4,025.00** | **4,025.00** | **4,025.00** | **1,025.00** | **4,025.00** | **20,950.00** |
| **Utilities** | | | | | | | |
| Water | 1,516.36 | 1,516.36 | 1,516.36 | 1,516.36 | 1,516.36 | 1,516.36 | 9,098.15 |
| Electric (Nipsco) | 13,057.71 | 13,057.71 | 13,057.71 | 13,057.71 | 13,057.71 | 13,057.71 | 78,346.29 |
| Sewer/Stormwater | 2,395.78 | 2,395.78 | 2,395.78 | 2,395.78 | 2,395.78 | 2,395.78 | 14,374.66 |
| **Total Utilities** | **16,969.85** | **16,969.85** | **16,969.85** | **16,969.85** | **16,969.85** | **16,969.85** | **101,819.10** |

| Account Name | November | December | January | February | March | April | Nov-April Total |
|---|---|---|---|---|---|---|---|
| **Miscellaneous** | | | | | | | |
| Management Fees | 8,951.61 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 46,451.61 |
| Legal (Non-BK) | - | - | 3,000.00 | 3,000.00 | 1,500.00 | - | 7,500.00 |
| Legal (BK) | 33,624.50 | 14,000.00 | 10,000.00 | 20,000.00 | 25,000.00 | 35,000.00 | 137,624.50 |
| Accounting | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 7,000.00 | 27,000.00 |
| Technology Fee | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 2,100.00 |
| Bank Fees | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 150.00 |
| Insurance - Property | 3,067.00 | 3,067.00 | 3,067.00 | 3,067.00 | 3,067.00 | 3,067.00 | 18,402.00 |
| Miscellaneous Expense | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 |
| **Total Miscellaneous** | **50,118.11** | **29,042.00** | **28,042.00** | **38,042.00** | **41,542.00** | **53,042.00** | **239,828.11** |
| **Total Operating Expense** | **104,767.13** | **87,557.68** | **96,993.33** | **91,368.33** | **63,286.85** | **77,786.85** | **535,301.83** |
| | | | | | | | |
| **NOI - Net Operating Income** | **(86,917.13)** | **(62,057.68)** | **(58,743.33)** | **(46,868.33)** | **(14,536.85)** | **(26,911.85)** | **(309,576.83)** |